FILED
OCT 30 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY FURIANI,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>Defendant. | Case No.: 3:17-cv-02221-LAB (RNB)<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 15, 18)** |

This Report and Recommendation is submitted to the Honorable Larry Alan Burns, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

On October 31, 2017, plaintiff Henry Furiani filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits. (ECF No. 1.)

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the

decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

On May 30, 2013, plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability commencing October 1, 2009. (Certified Administrative Record ["AR"] 143-44, 145-51.) After his claim was denied initially and upon reconsideration (AR 86-90, 96-101), plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 102-03.) An administrative hearing was held on July 7, 2016. Plaintiff appeared at the hearing with counsel, and testimony was taken from him and a vocational expert ("VE"). (AR 38-65.)

As reflected in his September 28, 2016 hearing decision, the ALJ found that plaintiff had not been under a disability, as defined in the Social Security Act, from October 1, 2009, the alleged onset date, through December 31, 2011, the date last insured. (AR 24-33.) The ALJ's decision became the final decision of the Commissioner on August 28, 2017, when the Appeals Council denied plaintiff's request for review. (AR 1-3.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ initially determined that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2011. (AR 24, 26.) The ALJ proceeded to follow the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520.[1] At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of

---

[1] Unless otherwise indicated, all references herein to the Commissioner's regulations are to the regulations in effect at the time of the ALJ's decision.

2

October 1, 2009 through his date last insured of December 31, 2011. (AR 26.)

At step two, the ALJ found that plaintiff had the following severe impairments: diabetes, degenerative disc disease of the lumbar spine, peripheral neuropathy, major depressive disorder, and bipolar disorder. (AR 26.)

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 27.)

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 404.1567(b). Specifically, the ALJ found that plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday; occasionally stoop, kneel, crouch, crawl, and climb stairs; and have no more than casual contact with the public, and be around coworkers but not work with them. (AR 29.)

For purposes of his step four determination, the ALJ found that plaintiff's past work as a flagger satisfied the regulatory requirements to constitute past relevant work. The ALJ proceeded to accept the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC would be able to perform that kind of work. (AR 32-33.) Accordingly, the ALJ found that plaintiff was not disabled through December 31, 2011, the last date insured. (AR 33.)

## DISPUTED ISSUES

As reflected in plaintiff's summary judgment motion, the disputed issues that plaintiff is raising as the grounds for reversal and remand are as follows:

1. Whether the ALJ's silent rejection of the opinion of treating social worker/therapist Caroline Stewart constitutes reversible error. (*See* ECF No. 15-1 at 3-7.)

2. Whether the ALJ properly rejected plaintiff's subjective pain and symptom testimony. (*See* ECF No. 15-1 at 7-11.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

### A. The Court is unable to affirm the ALJ's adverse credibility determination.

In a "Function Report – Adult," which appears to have been completed on plaintiff's behalf and signed by his wife on July 22, 2016, plaintiff alleged that his physical and mental impairments negatively affected his ability to lift, squat, bend, reach, sit, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. (*See* AR 178-86.)

At the administrative hearing held that same month, when asked by the ALJ what kind of problems he was having that would keep him from being able to work, plaintiff responded, "Basically, getting along with people. It's anxiety." (AR 42.) He also specified "overall pain in the shoulders, back, legs." (*Id.*)

With respect to his mental impairments, plaintiff testified that he experiences severe mood swings where he may go from happy to sad or "just pissed" to violent, and that this

4

causes him to be depressed 85% of the time. (AR 42-43.) He has suicidal thoughts at times, and his current medications for his bipolar disorder make him feel even more suicidal and are in the process of being changed. (AR 43-44, 50.) According to plaintiff, his ability to interact with others has worsened since he last worked, in that he has more confrontations with others now. (AR 47.) He even had a violent incident with a landlord, which led to a restraining order in approximately 2009 or 2010 – prior to the date last insured. (AR 55.) Because of his anxiety and his distress when he thinks about others, he tries to avoid interacting with people and stays at home. (AR 48, 53.) He never does social things with friends and has lost friends because of his behaviors. (*Id.*)

With respect to his physical impairments, plaintiff testified that his main physical problem was back pain. (AR 45.) The heaviest thing he can lift is 50 pounds, maybe two or three times. (*Id.*) He can stand and walk for at most one hour before needing to sit. (*Id.*) He experiences back and leg pain when sitting for too long. (*Id.*) Even when loading the dishwasher, he needs to take breaks. (*Id.*)

It is well established in the Ninth Circuit that, if the claimant has produced objective medical evidence of an impairment or impairments that could reasonably be expected to produce some degree of pain and/or other symptoms and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. *See Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). Further, it is incumbent on the ALJ to specify which statements by plaintiff concerning his or her symptoms and functional limitations were not credible and/or in what respect(s) plaintiff's statements were not credible. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Smolen*, 80 F.3d at 1284.

Here, the ALJ did make the following statement:

//

> "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record during the period at issue for the reasons explained in this decision." (AR 31)

Since the Commissioner has not argued that there was evidence of malingering, the Court will apply the "clear and convincing" standard to the ALJ's adverse credibility determination. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (applying "clear and convincing" standard where the government did not argue that a lesser standard should apply based on evidence of malingering); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014) (same).

The first reason cited by the ALJ in support of his adverse credibility determination was plaintiff's daily activities, which according to the ALJ were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AR 31.) The ALJ noted in this regard that plaintiff had indicated that he was "independent with personal care although it takes longer, and he is able to prepare simple meals, do dishes, vacuum, mop, do laundry, take out trash, and drive a car. (AR 31-32.)

Under Ninth Circuit jurisprudence, there are "two grounds for using daily activities to form the basis of an adverse credibility determination": Evidence of the daily activities either (1) contradicts the claimant's other testimony, or (2) meets the threshold for transferable work skills. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, neither of these grounds applies. First, the ALJ failed to posit any specific testimony by plaintiff that any of the specified daily activities contradicted. Indeed, none of the specified daily activities involved getting along with or even interacting with others. Accordingly, there was no inconsistency between plaintiff's ability to engage in those daily activities and his allegations/testimony regarding his mental impairments. Likewise, the Court fails

to see any inconsistency between plaintiff's ability to engage in those daily activities and his allegations/testimony regarding his physical limitations.

Second, the Commissioner does not even purport to contend that plaintiff's ability to engage in the specified daily activities constituted substantial evidence that plaintiff was able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *See, e.g., Diedrich v. Berryhill*, 874 F.3d 634, 642-43 (9th Cir. 2017) (claimant's ability to perform daily activities including personal hygiene, cooking, household chores, and shopping not a clear and convincing reason to find her less than fully credible); *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (evidence that claimant did certain chores that did not consume a substantial part of the day did not detract from her credibility); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1996) ("The Social Security Act does not require claimants to be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.") (internal citations omitted)).

The Court therefore finds that the first reason cited by the ALJ did not constitute a clear and convincing reason for not crediting plaintiff's subjective pain and symptom testimony.

The second reason cited by the ALJ in support of his adverse credibility determination was the lack of objective medical evidence to support plaintiff's allegations. (*See* AR 32.)[2] However, since the ALJ's other stated reason was legally insufficient to

---

[2] The Commissioner contends that the ALJ had another reason for not crediting plaintiff's subjective pain and symptom testimony, namely "plaintiff's successful conservative treatment." (*See* ECF No. 18-1 at 8.) However, the ALJ never characterized plaintiff's treatment as "conservative" or cite plaintiff's "successful conservative treatment" as a basis for his adverse credibility determination in the section of the decision in which he stated his reasons. (*See* AR 32.) Rather, in that section of his decision, the ALJ expressly stated that his RFC assessment contrary to plaintiff's allegations of disabling conditions was based on two things: plaintiff's activities of daily living and the objective

support his adverse credibility determination, this remaining reason (*i.e.*, the lack of objective medical support) cannot be legally sufficient by itself. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883-84 (9th Cir. 2006) (where ALJ's initial reason for adverse credibility determination was legally insufficient, his sole remaining reason premised on lack of medical support for claimant's testimony was legally insufficient); ' *v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); *cf. Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").[3]

**B. <u>The ALJ failed to properly evaluate the opinion of the social worker/therapist regarding the functional limitations resulting from plaintiff's mental impairments.</u>**

In his opening statement at the administrative hearing, plaintiff's counsel advised the ALJ that plaintiff's disability claim was based primarily on plaintiff's mental medical evidence contained in the record. (*See id.*) Because the ALJ did not rely on "plaintiff's successful conservative treatment" as a reason for not crediting plaintiff's subjective pain and symptom testimony, the Court is unable to consider it as a basis for upholding the ALJ's adverse credibility determination. *See Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

---

[3] The Court also concurs with plaintiff that the fact he received only limited treatment for his mental impairments prior to his date last insured, which the ALJ cited as an example of the lack of support in the medical record for plaintiff's allegations (*see* AR 32), is not a clear and convincing reason for rejecting plaintiff's testimony. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (citation omitted).

8

3:17-cv-02221-LAB (RNB)

impairments, as a result of which plaintiff "has extreme difficulty in interacting with people." (AR 41.) And, as noted above, when asked by the ALJ what kind of problems he was having that would keep him from being able to work, plaintiff specified in the first instance his inability to get along with people and his anxiety. (*See* AR 42.)

The evidence of record included a "Mental Residual Capacity Questionnaire" from plaintiff's treating social worker/therapist, Caroline Stewart, dated February 28, 2013. (AR 159-65.) Ms. Stewart diagnosed plaintiff as suffering from bipolar disorder, a pain disorder, and a schizotype personality disorder. Ms. Stewart reported that plaintiff frequently presents with bizarre ideation; that he is socially anxious and weeps easily; and that he often presents as labile, even on medications. (AR 159.)

Ms. Stewart assessed that plaintiff possessed limited but satisfactory ability to: ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; adhere to basic standards of neatness and cleanliness; and use public transportation. (AR 161-62.) Plaintiff was seriously limited, but not precluded in the ability to: understand, remember, and carry out simple instructions; sustain an ordinary routine without special supervision; and travel to unfamiliar places. (AR 161-62.)

According to Ms. Stewart, plaintiff was unable to meet competitive standards in the ability to: maintain regular attendance and be punctual within customary, usual strict tolerances; maintain attention for two hour segments; work in coordination with or proximity to others without being unduly distracted; make simple work related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instruction and respond appropriately to criticism from supervisors; get along with co-workers or peers without causing them undue distraction or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal stress; interact appropriately with the general public; and maintain socially appropriate behavior. He also was unable to meet competitive standards in various other areas needed to do semiskilled and skilled work. (AR 161-62.)

Ms. Stewart also assessed that plaintiff had marked restriction in activities of daily living, and difficulties in maintaining concentration, persistence or pace; that he had extreme difficulties in maintaining social functioning; and that he would miss work more than four days per month as a result of his impairments or treatment. (AR 164-65.)

As support for her opinion, Ms. Stewart stated *inter alia* that plaintiff's unpredictable mood, energy level, and motivation would impede regular attendance to a job; that he is preoccupied with bizarre thoughts; and that he does not handle stress well. (AR 161-62.) Ms. Stewart also observed that plaintiff required a high degree of shepherding as he was not internally motivated to stay on task without direct encouragement; and that he did not take criticism in a resilient way and could be "quite rigid." (AR 163.) Ms. Stewart stated that the earliest plaintiff's symptoms and limitations applied were from June 18, 2012, which was the first day plaintiff saw her for treatment. (AR 159, 165.)

In general, only licensed physicians and similarly qualified specialists qualify as acceptable medical sources who can provide evidence to establish a claimant's impairment. *See* 20 C.F.R. § 404.1513(a).[4] Social workers such as Ms. Stewart are classified as "other sources" who can provide evidence to show the severity of a claimant's impairment and how it affects his ability to work. *See* 20 C.F.R. § 404.1513(d)(3). An ALJ may not reject an opinion from an "other source" unless he provides reasons germane to that opinion. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

Here, the ALJ failed to even discuss Ms. Stewart's opinion regarding the functional limitations resulting from plaintiff's mental impairments, let alone provide any germane reasons for rejecting her opinion. The Commissioner contends that there was no error resulting from the ALJ's omission because Ms. Stewart's questionnaire concerned the time period after plaintiff's insured status expired. (*See* ECF No. 18-1 at 3-4.) The Court

---

[4] The relevant version of 20 C.F.R. § 404.1513 is the version in effect at the time of plaintiff's benefits application. *See* 82 Fed. Reg. 5844, 5862 (Jan. 18, 2017).

disagrees. Ms. Stewart indicated that she began treating plaintiff on June 18, 2012 (AR 159) and that her description of plaintiff's symptoms and limitations in the questionnaire dated back to when she began treating plaintiff (*see* AR 165). Absent a reason to think that plaintiff experienced a major symptom change in the six and a half months before he met Ms. Stewart, it is a fair and reasonable inference that the symptoms and limitations described by Ms. Stewart were substantially similar to the symptoms and limitations plaintiff experienced before December 31, 2011. *See Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014) ("[Lay witness's] statement that [claimant] was incapable of working in 2001 is relevant to his ability to work in 1999, at least in the absence of any evidence that [claimant's] condition worsened between 1999 and 2001."); *Turner*, 613 F.3d at 1228-29 ("While the ALJ must consider only impairments (and limitations and restrictions therefrom) that [the claimant] had prior to the DLI, evidence post-dating the DLI is probative of [the claimant's] pre-DLI disability."); *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995), *as amended* (Apr. 9, 1996) ("This court has specifically held that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." (citation and internal quotation marks omitted)); *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) ("We think it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability.").

Moreover, in response to the line on the form asking for the date of onset of the disabling condition, Ms. Stewart filled in that plaintiff had a medical history of mood swings since age 15. (*See* AR 159.) For this reason as well, the Court finds that Ms. Stewart's opinion did relate to the relevant time period from October 1, 2009 through December 31, 2011. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232-33 (9th Cir. 2011) (finding mental health assessment written eight months after ALJ's decision relevant to period before decision because it purported to relate to plaintiff's onset date); *cf. Bates v. Sullivan*, 894 F.2d 1059, 1064 (9th Cir. 1990) (finding mental health evidence not relevant to period on or before date of ALJ's decision where it purported to describe

plaintiff's condition more than two years after date last insured), *overruled on other grounds*, *Bunnell*, 947 F.2d at 342.

The Commissioner also contends that it was unnecessary for the ALJ to comment on the questionnaire completed by Ms. Stewart because her treatment notes from September 2012 through December 2015 "showed that plaintiff's symptoms came under control with conservative treatment in the form of medication and therapy." (*See* ECF No. 18-1 at 4-5.) However, to the extent that the Commissioner is proffering this evidence in response to plaintiff's contention regarding the relevance of Ms. Stewart's February 2013 opinion, the Commissioner is focusing on the wrong time period. As noted above, the relevant time period is the six and a half month period between December 31, 2011 and June 12, 2012, and the relevant question is whether there is any evidence that plaintiff's condition worsened during that period. To the extent that the Commissioner is proffering this evidence to show that the ALJ would have had a reason to accord little or no weight to Ms. Stewart's opinion, the Court is unable to consider that reason. *See Connett*, 340 F.3d at 874; *Ceguerra*, 933 F.2d at 738.

The Court therefore finds that, in failing to even discuss Ms. Stewart's opinion, the ALJ erred under Ninth Circuit jurisprudence.

The Commissioner further contends that, even if the ALJ erred, the error was harmless under *Molina*. In *Molina*, 674 F.3d at 1122, the Ninth Circuit held that the ALJ's failure to provide specific reasons for rejecting "other source" testimony was harmless error where "other source" testimony did not describe any more limitations than those plaintiff herself described, which the ALJ validly rejected. Here, the Court has found that the ALJ failed to validly reject plaintiff's subjective testimony regarding the severity of his mental impairments. Moreover, Ms. Stewart opined to functional limitations that were not the same as those encompassed by plaintiff's testimony, but rather went way beyond those encompassed by plaintiff's testimony. Accordingly, the ALJ's adverse credibility determination with respect to plaintiff's subjective symptom testimony, even if the Court

had been able to affirm it, could not render harmless the ALJ's failure to even discuss Ms. Stewart's opinion.

The Court therefore finds that *Molina* is not applicable here. Further, this is not an instance where the Court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony [of Ms. Stewart], could have reached a different disability determination." *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Rather, if Ms. Stewart's testimony about plaintiff's limitations was fully credited, a reasonable ALJ could have concluded that plaintiff's impairments precluded plaintiff from performing his past relevant work. *See Stout*, 454 F.3d at 1056 (holding that ALJ's failure to consider lay witness testimony about claimant's limitations was not harmless error where a reasonable ALJ could find that such limitations would preclude gainful employment).

The Court therefore finds and concludes that reversal also is warranted based on the ALJ's failure to properly consider Ms. Stewart's opinion.

## CONCLUSION AND RECOMMENDATION

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g., Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. *See, e.g., Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

The Court is mindful of Ninth Circuit authority for the proposition that, where an ALJ failed to properly consider either subjective symptom testimony or medical opinion evidence, it is sometimes appropriate to credit the evidence as true and remand the case for calculation and award of benefits. *See, e.g., Garrison v. Colvin*, 759 F.3d 995, 1019-21 (9th Cir. 2014). However, in *Ghanim*, 763 F.3d at 1167, a case decided after *Garrison*, another Ninth Circuit panel did not apply or even acknowledge the "credit as true" rule where substantial evidence did not support an ALJ's rejection of treating medical opinions and his adverse credibility determination; instead, the panel simply remanded the case for further administrative proceedings. And, in *Marsh v. Colvin*, 792 F.2d 1170, 1173 (9th Cir. 2015), the panel did not apply or even acknowledge the "credit as true" rule where the ALJ had failed to even mention a treating source's opinion that the claimant was "pretty much nonfunctional"; instead, the panel simply remanded the case to afford the ALJ the opportunity to comment on the doctor's opinions.

Here, although plaintiff conclusorily asserts that "[t]he Court should reverse the ALJ's decision and order payment of benefits" (*see* ECF No. 15-1 at 12), the Commissioner has argued that the proper remedy in the event of reversal is a remand for further administrative proceedings (*see* ECF No. 18-1 at 10-11). The Court deems plaintiff's failure to adequately brief the issue of the appropriate remedy and failure to even reply to the Commissioner's legal argument in this regard as a concession to the correctness of the Commissioner's position.

For the foregoing reasons, this Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED,** and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections

should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See id.*

IT IS SO ORDERED.

Dated: October 29, 2018

ROBERT N. BLOCK
United States Magistrate Judge